Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8731 | **DATE** | 6/28/2002 |
| **CASE TITLE** | Morgan Sangamon Partnership Vs. Sable | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The decision of the bankruptcy court is affirmed. Enter Memorandum Opinion and Order.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 7 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 1 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/28/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD SABLE, not individually but as trustee for Coventry Eye Care Center of Evanston Illinois Partnership Pension Fund, | ) ) ) ) ) ) | |
| Appellant, | ) ) | No. 01 C 6210 |
| v. | ) ) | |
| MORGAN SANGAMON PARTNERSHIP, | ) ) | |
| Appellee. | ) | |
| MORGAN SANGAMON PARTNERSHIP, | ) ) | |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| LEONARD SABLE, not individually but as trustee for Coventry Eye Care Center of Evanston Illinois Partnership Pension Fund, | ) ) ) ) ) ) | No. 01 C 8731 |
| Appellee. | ) | |

DOCKETED JUL 0 1 2002

## MEMORANDUM OPINION AND ORDER

Morgan Sangamon is an Illinois general partnership that was formed in 1993 by Jerome Cedicci, Michael Perlstein, and Ronald Goodman for the purpose of owning and managing a single piece of real property. The partnership agreement prohibits the admission of an additional or substitute partner without the written consent of all partners. ¶ 7(d)(vi). It also contains an "*ipso facto* clause, providing that the bankruptcy of a partner:

shall terminate and dissolve the Partnership, provided that
the remaining Partners shall forthwith reconstitute the
Partnership and continue to conduct the business of the
Partnership. The successor in interest of such [bankrupt]
Partner shall succeed to and own the interest in the
Partnership theretofore owned by his predecessor in interest
and may be admitted as to [sic] a substituted partner of the
Partnership with the approval of, and upon the terms and
conditions designated by, the Managing Partners.

¶ 10(b). Cedicci and Perlstein were the managing partners.

In a 1997 transaction, Cedicci executed a collateral assignment of his 40 percent share in the partnership to Leonard Sable. Cedicci filed a petition for voluntary Chapter 7 bankruptcy in 1998. Rather than foreclosing on the collateral assignment, Sable purchased Cedicci's 40 percent interest from the bankruptcy estate in a public auction in 1999. When the property owned by the partnership fell into tax arrears in 2001, Sable filed a petition for involuntary bankruptcy against the partnership. The bankruptcy court dismissed the petition, holding that Sable's purchase of Cedicci's economic interest did not make him a general partner with standing to file an involuntary petition against the partnership under 11 U.S.C. § 303(b). *In re Morgan Sangamon P'ship*, 269 B.R. 652, 653 (Bankr. N.D. Ill. 2001). Sable appeals the dismissal of his petition; the partnership cross-appeals the bankruptcy court's denial of attorneys' fees.

I review the bankruptcy court's factual findings for clear error, and I review its conclusions of law de novo. *In Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996). The bankruptcy court

2

concluded that the partnership agreement was an executory contract[1] that fell within the scope of 11 U.S.C. § 365(e)(2), and that the *ipso facto* clause in ¶ 10(b) was therefore valid and enforceable against Sable. Accordingly, it held that Sable was not a general partner and lacked standing to bring an involuntary petition against the partnership. Sable argues that the bankruptcy court erred in holding that he lacked standing, failing to find that the conduct of the remaining partners constituted his admission as a general partner, and denying him an evidentiary hearing.

This appeal turns on the bankruptcy court's conclusion that the *ipso facto* clause in the partnership agreement is valid. The parties agree that the partnership agreement is an executory contract. Executory contracts are governed by 11 U.S.C. § 365, which provides that *ipso facto* clauses that terminate an executory contract upon the bankruptcy of one of the parties are invalid, § 365(e)(1)(A), except if "applicable law excuses [the non-bankrupt party to the contract] from accepting performance from or rendering performance to the trustee or an assignee of such contract . . . , whether or not such contract . . . prohibits or restricts assignment of rights or delegation of duties," and the non-bankrupt parties do not consent to the assignment. § 365(e)(2). The

---

[1] In the context of the Bankruptcy Code, an executory contract is a contract under which the obligations of both the bankrupt and non-bankrupt party to the contract are as yet unperformed and that failure of either party to preform would cause a material breach. *See Black's Law Dictionary* 570 (6th ed. 1990).

3

prototypical example of the kind of contract that would be exempt under § 365(e)(2) is a "so-called 'personal service contract,' a contract entered into on the basis of the 'character, reputation, taste, skill, or discretion of the party that is to render [performance].'" *In the Matter of Midway Airlines, Inc.*, 6 F.3d 492, 495 (7th Cir. 1993). Non-bankrupt parties to this kind of a contract need not accept substitutions or assignments under § 365(e) if they are excused by applicable law.[2]

"Applicable law" here is Illinois law, *see Midway Airlines*, 6 F.3d at 496, which provides that a partnership is dissolved by the bankruptcy of any partner, 805 ILCS 205/31(5), and that conveyance of a partnership interest does not entitle the assignee to anything more than a share of the profits, *id.* § 27(1). Thus, under applicable law, the partnership was not obligated to accept Sable as a substitute partner, and the bankruptcy estate could only assign Cedicci's financial interest to Sable, not his status as a general partner. Sable argues that, because all of Cedicci's

---

[2] Sable argues that all *ipso facto* clauses are unenforceable, but the cases that he cites are inapposite because they do not involve the assignment of an interest to a third party. *See, e.g., Central States, S.E. & S.W. Areas Pension Fund v. Basic American Indus., Inc.*, 252 F.3d 911, 917 (7th Cir. 2001) (holding that *ipso facto* clause that defines bankruptcy as default is unenforceable against debtor); *Summit Investemtn & Devel. Corp. v. LeRoux*, Nos. 94-11251-DPW & 94-11252-DPW, 1995 WL 447800, at *9-10 (D. Mass. Oct. 20, 1995) (holding that, although 11 U.S.C. § 365(e)(2) allows enforcement of ipso facto clauses to prevent the assignment of certain executory contracts to third parties, such clauses cannot be enforced against a debtor-in-possession who is one of the original parties to the contract).

4

interests were transferred to the bankruptcy estate, including his equitable and contractual rights to participate in the management of partnership affairs, the partnership was not dissolved, "[a]rguably," until the bankruptcy trustee rejected the partnership agreement. Sable Brief at 7 n.1. However, the question under § 365(e) is not what was transferred to the bankruptcy estate, rather it is what rights and interests could be assigned by the estate to a third party. Because the *ipso facto* clause dissolved the partnership, and because Illinois law does not permit the trustee to foist a substitute partner on the remaining, non-bankrupt partners if they are unwilling, § 365(e)(2) prohibited the assignment to Sable of anything more than a financial interest in the partnership.

Because the remaining partners have failed to wind up the partnership after dissolution and pay Sable his distributive share, and because they have communicated with him about partnership affairs, Sable argues that they have effectively substituted him as a general partner, waived any objection to and should be estopped from denying his status as a general partner. To the extent that Sable is complaining that remaining partners have not complied with the partnership agreement or Illinois law on the issue of winding-up, a bankruptcy petition is not the proper place to raise that grievance. He cites no Illinois authority for the viability of an estoppel claim between an assignee and partners of a reconstituted

5

partnership, but even if there is such a claim, he cannot demonstrate that he detrimentally relied on any actions of the partnership.

Perlstein approved the collateral assignment, which would have transferred to Sable not only Cedicci's financial interest, but also his status as a partner. However, Sable opted not to foreclose on the collateral assignment, and instead, purchased only the financial interest at a public auction. He cannot credibly claim that he relied on an agreement that he himself chose not to enforce. He also claims that, after he purchased Cedicci's interest, the partnership gave him access to its books and included him in discussions about partnership matters. There can be no detrimental reliance on the basis of actions that occurred *after* he purchased the interest, *see Vaughn v. Speaker*, 533 N.E.2d 885, 891 (Ill. 1988) (holding that standard for "determining whether reliance was detrimental is whether the reliance played a substantial part, and so was a substantial factor, in influencing the decision" of the claimant to act to its detriment), and he does not explain how he otherwise changed his circumstances in reliance on the partnership's actions.

Sable also claims that, because Perlstein referred to Sable as a partner on one occasion, the partnership waived any objection to his status as a substituted partner. He cites only an unreported Wisconsin appellate court case, applying Wisconsin rules of waiver,

6

which provide that "a party may waive a written provision of a contract which is intended for his or her benefit, so long as the waiver does not deprive a non-waiving party of a benefit." *Field Enters v. Gresser*, 468 N.W.2d 30, 1990 WL 262001, at *20 (Wis. Ct. App. Dec. 27, 1990). Even if this were the law in Illinois under these circumstances, and I need not decide whether it is, Sable could not prevail. Both the partnership agreement, ¶ 7(d)(vi), and the Uniform Partnership Act, 805 ILCS 205/18(g), require the consent of *all* partners, so Perlstein's alleged statement could not effect a waiver on behalf of the partnership. No evidentiary hearing was necessary because there were no material factual disputes, only differences about the effect to be given to undisputed facts. The bankruptcy court did not err in finding that Sable lacked standing to file the involuntary bankruptcy petition against the partnership.

The partnership appeals the bankruptcy court's denial of attorneys' fees. Under 11 U.S.C. § 303(i)(1), the bankruptcy may award attorneys' fees and costs against the petitioner. *In re Reid*, 854 F.2d 156, 159 (7th Cir. 1988). I review the bankruptcy court's decision to deny fees for abuse of discretion. *Id.* Factors informing the exercise of discretion are the good or bad faith of the petitioner and the relative merits of the petition. *Id.* at 160. I may also consider the petitioner's "motivation and objectives." *In re K.P. Enterprise*, 135 B.R. 174, 177 (Bankr. D. Me. 1992).

7

Although the Bankruptcy court concluded, correctly, that Sable lacked standing, his novel arguments were not frivolous and there is no indication of bad faith. The partnership argues that Sable had no chance of succeeding on the merits of the petition because there was only one debt. However, the bankruptcy court concluded that Sable's motivation and objective in filing the petition--preventing a tax sale of the partnership's sole asset--justified a denial of fees. Transcript of 9/24/2001 Hearing at 16. This was a proper consideration, and I find that the bankruptcy court did not abuse its discretion.

The decision of the bankruptcy court is AFFIRMED.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: June 28, 2002